UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:15-CV-228-TBR

JAE ENTERPRISES, INC.,                                        Plaintiff,

v.

OXGORD INC., et al.,                                        Defendants.

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court upon Defendants' OxGord, Inc. and Day to Day Imports, Inc. Motion to Dismiss. (Docket No. 20.) Plaintiff Jae Enterprises, Inc. has responded, (Docket No. 22), and Defendants have replied. (Docket No. 24.) Fully briefed, this matter is ripe for adjudication. For the reasons enumerated below, the Court will DENY Defendants' Motion.

**Background**

Plaintiff Jae Enterprises, Inc. ("Jae") provides aftermarket automobile accessories. (Docket 1 at 3.) Defendants OxGord, Inc. and Day to Day Imports, Inc. ("Defendants") also sell automobile parts and accessories. (Docket No. 1 at 4.)

Jae's automobile and truck accessories are sold under a federal trademark registration for the mark "Eagle Flight," Reg. No. 4037849. (Docket No. 1 at 3.) "In addition to its word mark 'Eagle Flight,' Jae uses designs as trademarks, including Federal Reg. Nos. 3049289 and 1838404." *Id.* The design trademarks contain "stylized depictions of the Eagle Flight brand." *Id.* According to Jae, it distributes its Eagle Flight goods by either selling them to its customers directly or by selling them to wholesale distributors who then sell the goods to consumers. *Id.* When Jae sells directly to its customers, it does so through its own website as well as through internet retailers like Amazon. *Id.* at 3-4.

1

Jae and the Defendants entered into a distribution agreement. *Id.* at 4. Under the agreement, Defendants purchased Eagle Flight products from Jae and then re-sold the products to end customers in a manner of their choosing. *Id.* The Defendants re-sold the products through internet retailers such as Amazon. *Id.* In fact, Defendants were "co-listed alongside Jae on Amazon under Eagle Flight product listings." *Id.* According to the Defendants, each product sold on Amazon has a product detail page, and "[t]he first seller to offer a product for sale creates the product detail page . . . and is said to 'own' that page." (Docket No. 20-1 at 2.) Then other sellers offering the same product list their product "against" the original product detail page, and customers "can view all potential sellers of a product from the same page." *Id.*

Eventually, the parties' relationship deteriorated. (Docket No. 1 at 4.) On October 3, 2013, Jae informed the Defendants by letter that effective October 15, 2013, Jae was terminating its business relationship with them. *Id.* Even after their business relationship ended, both parties agree that the Defendants were lawfully permitted to sell any remaining Eagle Flight products that they had purchased under the distribution contract. (Docket Nos. 1 at 4; 20-1 at 3.) Defendants state that they continued to list the Eagle Flight products they had remaining on Amazon. (Docket No. 20-1 at 3.) Alternatively, Jae contends that two years after the parties' relationship ended the "Defendants continued to advertise and sell non-Eagle Flight products under the 'Eagle Flight' mark after running out of Eagle Flight products to fill orders." (Docket No. 1 at 5.) Jae argues that multiple customers received generic non-Eagle Flight products despite having ordered what they believed to be Eagle Flight products advertised by the Defendants on Amazon. *Id.* Jae also alleges that the Defendants "purposefully delayed shipments to customers," and when customers complained about the shipping delay, the Defendants responded that the delay was due to "quality issues" with the manufacturer, i.e. Jae. *Id.*

2

In addition to selling non-Eagle Flight products under the Eagle Flight mark, Jae contends that the Defendants "gained administrative access" to its product listings on Amazon and changed the listings to state incorrect information. *Id.* In particular, Defendants allegedly changed the listings to state such incorrect information as "a particular product only fits a certain style of truck, that a listing is only for a single product as opposed to an entire set, and changed the model year with which a particular product is compatible." *Id.* Following the Defendants' alleged alterations to Jae's product listings, Jae informed Amazon that the Defendants were no longer authorized distributors of Eagle Flight products. *Id.* Jae subsequently requested that Amazon remove the Defendants from its product listings, and Amazon complied with Jae's request. *Id.*

Lastly, Jae alleges that the Defendants called their customers who had purchased Eagle Flight products and provided a positive review of the products on Amazon. Jae contends that the Defendants offered these customers a full refund for the Eagle Flight product they purchased if they agreed to change their positive review to a negative one. *Id.* at 6. Jae states that it has an audio recording of one of these alleged calls. *Id.*

As a result of the Defendants' alleged actions, Jae filed this action on October 23, 2015.

## Legal Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  In order to survive a motion to dismiss under Civil Rule 12(b)(6), a party must "plead enough 'factual matter' to raise a 'plausible' inference of wrongdoing." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  Should the well-pleaded facts support no "more than the mere possibility of misconduct," then dismissal is warranted.  *Id.* at 679.  The Court may grant a motion to dismiss "only if, after drawing all reasonable inferences from the allegations in the complaint in favor of the plaintiff, the complaint still fails to allege a plausible theory of relief." *Garceau v. City of Flint*, 572 F. App'x 369, 371 (6th Cir. 2014) (citing *Iqbal*, 556 U.S. at 677–79).

**Discussion**

Defendants contend that Jae's Complaint should be dismissed in its entirety under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Specifically, the Defendants argue that Jae's claims for (1) trademark infringement; (2) product disparagement; (3) false advertising; (4) false designation of origin; (5) unfair competition; (6) defamation; and (7) tortious interference with a prospective business advantage are "deficient under both federal and state law." (Docket No. 20-1 at 1.) The Court will address the viability of each of the aforementioned claims below.

I.    Trademark Infringement Claims Under 15 U.S.C. § 1114(1)(a), (b)

The Lanham Act protects registered patents, trademarks, and copyrights. *Coach, Inc. v. Goodfellow*, 717 F.3d 498, 502 (6th Cir. 2013). With regard to trademark infringement, the Lanham Act states the following:

(1) Any person who shall, without the consent of the registrant-

    (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

    (b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles

4

or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,

shall be liable in a civil action by the registrant . . . .

15 U.S.C. § 1114(1)(a), (b). In order to prove trademark infringement, a party must show "(1) that it owns a trademark, (2) that the infringer used the mark in commerce without authorization, and (3) that the use of the alleged infringing trademark 'is likely to cause confusion among consumers regarding the origin of the goods offered by the parties.'"  *Goodfellow*, 717 F.3d at 502 (quoting *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 502 F.3d 504, 515 (6th Cir. 2007)). There is also an exception known as the "first sale" exception which provides a defense to a claim of trademark infringement. *Brilliance Audio, Inc. v. Haights Cross Commc'ns, Inc.*, 474 F.3d 365, 369 (6th Cir. 2007). The Defendants have attacked Jae's trademark infringement claims on the grounds that (1) they have not "used" the Eagle Flight mark in commerce, (2) there was not a likelihood of consumer confusion, and (3) they had Jae's consent to advertise and sell Eagle Flight products. (Docket No. 20-1 at 7-12.)

The Court will first address the Defendants' argument concerning their "use" of the Eagle Flight mark. A trademark is deemed to be "used in commerce" when "it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and the goods are sold or transported in commerce." 15 U.S.C. § 1127; *see also Rohn v. Viacom Int'l, Inc.*, No. 1:14-CV-83, 2015 WL 4395280, at *3 (W.D. Mich. July 15, 2015). Goods sold through the internet fall under the jurisdiction of the Lanham Act as the internet is "an instrumentality of interstate commerce."

*Ford Motor Co. v. Heritage Mgmt. Grp., Inc.*, 911 F. Supp. 2d 616, 622 (E.D. Tenn. 2012) (quoting *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045 (10th Cir. 2008)).

 Under 15 U.S.C. § 1127, a trademark is used in commerce when "it is placed in any manner on . . . the displays associated [with the goods]." The Patent and Trademark Office ("PTO") publishes the Trademark Manual of Examining Procedure ("TMEP") which provides trademark attorneys and trademark applicants "with a reference work on the current law, practices, and procedures relative to prosecution of applications to register marks" with the United States PTO. *Guides, Manuals, and Resources*, U.S. PAT. & TRADEMARK OFF. (Jan. 1, 2016, 12:18 AM), http://www.uspto.gov/trademark/guides-and-manuals/manuals-guides-official-gazette. Though this manual concerns applications for trademarks, the PTO's TMEP provides a helpful analysis of 15 U.S.C. § 1127's definition of "use in commerce" pertaining to goods. According to the TMEP, "[d]isplays associated with the goods also exist in an electronic or online environment in the form of web pages. These 'electronic displays' perform the same function as traditional displays." Patent and Trademark Office, U.S. Dep't of Commerce, Trademark Manual of Examining Procedure ("TMEP") § 904.03(g) (Oct. 2015). The TMEP states that "[a] webpage that displays a product can constitute 'a display associated with goods' if it: (1) contains a picture or textual description of the identified goods; (2) shows the mark in association with the goods; and (3) provides a means for ordering the identified goods." TMEP § 904.03(i). Notably, "[a] webpage from a third-party website (such as Amazon) may be acceptable as a display if the mark is sufficiently associated with the applicant's goods." *Id.*

 The Defendants argue that they did not "use" the Eagle Flight mark in commerce because Jae created the product detail page on Amazon through which the Defendants allegedly

advertised and sold non-Eagle Flight products. (Docket No. 20-1 at 9.) Furthermore, the Defendants argue that the products that they allegedly sold were clearly identifiable as non-Eagle Flight products and did not bear the Eagle Flight mark. *Id.* Jae acknowledges that it created the product detail pages on Amazon and states that the product detail pages contained pictures of the Eagle Flight products for sale along with the Eagle Flight mark. (Docket No. 22 at 12.) Furthermore, Jae argues that the Defendants "listed themselves as registered sellers on [the product detail pages] and provided the means for customers to purchase Eagle Flight products from [them]." *Id.* Given the parties' description of the Eagle Flight product detail pages on Amazon and the Court's knowledge of Amazon, it appears that the Defendants' alleged sale of Eagle Flight products on Amazon through Eagle Flight product detail pages would satisfy the TMEP's three factors and constitute the "use" of Jae's mark in commerce. While the internet is still a relatively new venue for sales and the manner in which retailers and customers interact is rather different on internet sites like Amazon than in a traditional brick-and-mortar retail store, the Lanham Act applies to sales on the internet. *Ford Motor Co.*, 911 F. Supp. 2d at 622. The Defendants' argument is flawed as it relies on a technicality that ignores the practical effect of their decision to allegedly list themselves as a seller on an Eagle Flight product detail page and, consequently, to advertise and sell products using the Eagle Flight mark to consumers. The Court finds that the Jae's complaint contains sufficient factual allegations to support the second element of a trademark infringement claim which requires that the infringer use the mark in commerce.

The Defendants next argue that the Jae's Complaint contains insufficient factual allegations of consumer confusion, the third element of a trademark infringement claim. The third element regarding confusion is often "[t]he touchstone of liability under § 1114." *Daddy's*

*Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997). According to the Sixth Circuit Court of Appeals, "[w]hether a likelihood of confusion exists is a mixed question of fact and law, but the ultimate determination of whether a given set of foundational facts establishes a likelihood of confusion is a legal conclusion." *Innovation Ventures, LLC v. N.V.E., Inc.*, 694 F.3d 723, 731 (6th Cir. 2012) (quoting *Therma–Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 630–31 (6th Cir. 2002)). In making a determination concerning whether a likelihood of confusion exists, a Court must weigh the following eight factors:

1. strength of the senior mark;
2. relatedness of the goods or services;
3. similarity of the marks;
4. evidence of actual confusion;
5. marketing channels used;
6. likely degree of purchaser care;
7. the intent of defendant in selecting the mark; and
8. likelihood of expansion of the product lines

*Daddy's Junky Music Stores*, 109 F.3d at 280 (citing *Frisch's Restaurants, Inc. v. Elby's Big Boy, Inc.*, 670 F.2d 642, 648 (6th Cir. 1982). However, "these factors imply no mathematical precision, and a plaintiff need not show that all, or even most, of the factors listed are present in any particular case to be successful." *Abercrombie & Fitch v. Fashion Shops of Kentucky, Inc.*, 363 F. Supp. 2d 952, 959 (S.D. Ohio 2005) (citing *PACCAR Inc. v. TeleScan Technologies, L.L.C.*, 319 F.3d 243, 249–50 (6th Cir. 2003)). For a court, "the ultimate question is whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way." *Id.* (quoting *Daddy's Junky Music Stores*, 109 F.3d at 280).

Here, Defendants argue that there is no similarity between the Eagle Flight mark and the marks on the products that the Defendants allegedly mistakenly sent to consumers who thought they were ordering Eagle Flight products and, therefore, there is no likelihood of confusion. (Docket No. 20-1 at 10.) Alternatively, Jae contends in its Complaint that the Defendants

8

"[w]ithout license or permission . . . advertised and sold their generic products and even competitors' products, in some cases, under the Eagle Flight mark, when in fact the products that the Defendants actually distribute[d] to the purchaser [were] not Eagle Flight." (Docket No. 22 at 7 (quoting Docket No. 1 at 4.)) Jae accuses the Defendants of passing off generic and even competitor automobile accessories as Eagle Flight automobile accessories because customers thought they were ordering the advertised Eagle Flight product and instead received a non-Eagle Flight product.[1] The Sixth Circuit Court of Appeals has stated that "[t]he essence of the wrong of trademark infringement is the passing off of the goods of one as those of another." *Beer Nuts, Inc. v. King Nut Company*, 477 F.2d 326, 329 (6th Cir. 1973); *see also Dastar Corp. v. Twentieth Century Fox Film Corp*., 539 U.S. 23, 28 (2003) (citations omitted) ("Passing off (or palming off, as it is sometimes called) occurs when a producer misrepresents his own goods or services as someone else's."). Accepting the allegations in Jae's Complaint as true, which this Court must do when considering a Motion to Dismiss, Jae has provided sufficient allegations to support the third element of trademark claim a likelihood of confusion.

---

[1] In their Reply, Defendants urge the Court to look to a product detail page from which one customer at issue allegedly ordered an Eagle Flight product but instead received a non-Eagle product. The Defendants argue that their attachments show that one of the customers in question ordered from a product detail page containing an IWC product not an Eagle Flight product and therefore he correctly received an IWC product. (Docket No. 24-1 at 1-5.) Defendants state that this Court may consider the evidence they provide in addition to Jae's Complaint as Jae's allegations that the Defendants purposefully incorrectly filled orders for Eagle Flight products with non-Eagle Flight products are central to Jae's trademark infringement claim. (Docket No. 24 at 3-4.) The Defendants are correct that the Sixth Circuit Court of Appeals has found that documents that a defendant attaches to his or her motion to dismiss may be considered by the Court as part of the pleadings if the documents are referred to in the plaintiff's complaint and are central to the plaintiff's claim. *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 466 (6th Cir. 2014) (citing *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 88–89 (6th Cir. 1997)). The Court finds that Defendants' attachment meets these requirements as Jae's Complaint states that Jae has "information" that "[m]ultiple customers have received generic product's instead of the Eagle Flight products they were expecting after they ordered Eagle Flight advertised products on Amazon from the Defendants," (Docket No. 1 at 5.), and this allegation is central to Jae's claims for trademark infringement. However, Defendants' attachment does not lead this Court to conclude that Jae failed to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." As the Defendants note, the three additional customer orders at issue involve product detail pages that they can no longer locate on Amazon. (Docket No. 24 at 4.) The Defendants are unable to show that Jae's allegations as they relate to the other three customer orders at issue are incorrect. Jae has provided sufficient factual allegations to support the elements of a trademark infringement claim.

Lastly, the Defendants argue that Jae's claims for trademark infringement should be dismissed because the Defendants had Jae's consent to advertise and sell Eagle Flight products. The Sixth Circuit Court of Appeals recognizes the "first sale" exception in trademark law which provides a defense to claims of trademark infringement. *Brilliance Audio*, 474 F.3d at 369 (citing *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368–69 (1924)). Under this exception, "resale by the first purchaser of the original trademarked item is generally neither trademark infringement nor unfair competition." *Id.* In other words, "a purchaser who does no more than stock, display, and resell a producer's product under the producer's trademark violates no right conferred upon the producer by the Lanham Act." *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 766 (6th Cir. 2005) (quoting *Sebastian Int'l, Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073, 1076 (9th Cir. 1995) This Circuit's Court of Appeals has explained that the rationale for the "first sale" exception "is that trademark law is designed to prevent sellers from confusing or deceiving consumers about the origin or make of a product, which confusion ordinarily does not exist when a genuine article bearing a true mark is sold." *Brilliance Audio*, 474 F.3d at 369 (quoting *NEC Elecs. v. CAL Circuit Abco*, 810 F.2d 1506, 1509 (9th Cir. 1987)).

There are two situations under which the resale of a product does not fall within the "first sale" exception. The first is "when the notice that the item has been repackaged is inadequate." *Id.* (citing *Enesco Corp. v. Price/Costco Inc.*, 146 F.3d 1083, 1085–86 (9th Cir.1998)). This situation is not at issue in this case. The second is "when an alleged infringer sells trademarked goods that are *materially different* than those sold by the trademark owner." *Id.* at 370 (emphasis in original) (citing *Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1302 (11th Cir. 2001)). The underlying rationale for this exception to the "first sale" rule is "that a material difference in a product is likely to cause consumer confusion and could dilute the value of the

trademark." *Id.* In order for a difference to be material, it "must be one that consumers consider relevant to a decision about whether to purchase a product." *Id.* (quoting *Davidoff*, 263 F.3d at 1302) (internal quotation marks omitted). "The question of materiality is a fact-based inquiry requiring an examination of the products and markets at issue." *Id.*

Defendants point to the parties' distribution agreement as proof that they had "express consent and authorization to sell Eagle Flight products for as long as those products remained in [their] inventory." (Docket No. 20-1 at 7.) Furthermore, Defendants argue that they "still have Eagle Flight branded products on hand in their warehouse" and therefore continued to list Eagle Flight products on Amazon. *Id.* Jae responds that "Defendants advertised under the Eagle Flight mark, and sold from these listings at a premium due to Eagle Flight's goodwill, but filled the orders with non-Eagle Flight products." (Docket No. 22 at 9.) Jae is adamant that "[h]aving had rights to market and sell genuine Eagle Flight products in the past does not give Defendants the right to use the mark indefinitely." (Docket No. 22 at 9-10.) Furthermore, Jae casts doubt on the Defendants possession of Eagle Flight products at the time it filed this action as over two years had passed since the Defendants last purchased any Eagle Flight products from Jae. (Docket No. 1 at 4-5.) Jae has provided sufficient factual allegations to support the inapplicability of the first sale doctrine as its allegations when accepted as true support the conclusion that the Defendants advertised and sold products under the Eagle Flight mark that were materially different from genuine Eagle Flight products.

II.     Federal Product Disparagement Under 15 U.S.C. § 1125(a)(1)(B)

15 U.S.C. § 1125(a)(1)(B) "forms the basis for what are generally known as 'false advertising,' 'trade libel,' and 'product disparagement claims.'" *Veteran Med. Products, Inc. v. Bionix Dev. Corp.*, No. 1:05-CV-655, 2009 WL 891724, at *5 (W.D. Mich. Mar. 31, 2009)

(citing *Zenith Electronics Corporation v. Exzec, Inc.*, 182 F.3d 1340, 1347–48 (Fed. Cir. 1999));

*see also* 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* §§ 27:24, 93

(4th ed.), Westlaw (database updated March 2016). Because of its concerns that the 1989

amendments to 15 U.S.C. § 1125(a)(1)(B) would impinge on free speech, Congress has restricted

liability under this section to "commercial advertising or promotion." McCarthy, *supra*, § 27:95.

According to the statute:

> Any person who, on or in connection with any goods or services, or any
> container for goods, uses in commerce any word, term, name, symbol, or
> device, or any combination thereof, or any false designation of origin,
> false or misleading description of fact, or false or misleading
> representation of fact, which . . . in commercial advertising or promotion,
> misrepresents the nature, characteristics, qualities, or geographic origin
> of his or her or another person's goods, services, or commercial
> activities, shall be liable in a civil action . . . .

The Sixth Circuit Court of Appeals has established that to state a claim under 15 U.S.C. §

1125(a)(1)(B) "a plaintiff must establish the following: 1) the defendant has made false or

misleading statements of fact concerning his own product or another's; 2) the statement actually

or tends to deceive a substantial portion of the intended audience; 3) the statement is material in

that it will likely influence the deceived consumer's purchasing decisions; 4) the advertisements

were introduced into interstate commerce; and 5) there is some causal link between the

challenged statements and harm to the plaintiff." *Am. Council of Certified Podiatric Physicians

& Surgeons*, 185 F.3d 606, 613 (6th Cir. 1999) (first citing *U.S. Healthcare, Inc. v. Blue Cross of

Greater Philadelphia*, 898 F.2d 914, 922–23 (3d Cir. 1990); then citing *ALPO Petfoods, Inc. v.

Ralston Purina Co.*, 913 F.2d 958, 964 (D.C. Cir. 1990)). With regards to the first element,

"[w]hen a plaintiff seeks an award of monetary damages for false or misleading advertisement

under the Lanham Act, he may show either that the defendant's advertisement is literally false or

that it is true yet misleading or confusing." *Id.* at 614 (citing *Castrol, Inc. v. Pennzoil Co.*, 987

F.2d 939, 943 (3d Cir. 1993)). When a statement is literally false, deception is presumed and a violation may be established without any actual evidence that the false statement misled customers. *Id.* Alternatively, when a statement is true but deceptive or ambiguous, "a violation can only be established by proof of actual deception (i.e., evidence that individual consumers perceived the advertisement in a way that misled them about the plaintiff's product)." *Id.* Lastly, "a Lanham Act claim must be based upon a statement of fact, not of opinion." *Id.* (first citing *Groden v. Random House, Inc.*, 61 F.3d 1045, 1052 (2d Cir.1995); then citing *Gillette Co. v. Norelco Consumer Prods. Co.*, 946 F. Supp. 115, 136 (D. Mass. 1996)).

In its Complaint, Jae states that the Defendants' "past and continued sale, offer to sell, distribution and advertisement of non-Eagle Flight automobile accessories under the 'Eagle Flight' trademark constitutes product disparagement, as such conduct misrepresents the nature, characteristics, qualities, and geographic origin of Jae's 'Eagle Flight' products." (Docket No. 1 at 9; see also Docket No. 1 at 12.) In their Motion to Dismiss, the Defendants argue that the statute is inapplicable to the facts alleged because they merely listed Eagle Flight products that they had purchased and were permitted to sell under the parties' distribution agreement. (Docket No. 20-1 at 15.) According to the Defendants, Jae has mischaracterized the law because "it seeks to shoehorn a claim based on improperly filled orders into a law that deals with misrepresentation in commercial advertising." (Docket No. 20-1 at 15.) The Defendants simply present an alternative version of the facts at issue. When the Court accepts Jae's allegations as true, as it must when considering a Motion to Dismiss, the Court finds that Jae has pled sufficient facts to state a claim for product disparagement under 15 U.S.C. § 1125(a)(1)(B) with regards to Defendants' alleged advertisement and sale of non-Eagle Flight products under the Eagle Flight mark.

Jae also alleges that Defendants purposefully altered Jae's product listings on Amazon to state "incorrect information, including that a particular product only fits a certain style of truck, that a listing is only for a single product as opposed to an entire set, and changed the model years with which a particular product is compatible." (Docket No. 1 at 5.) Jae contends that the Defendants' alleged alterations to its online product listing violate the statute because they too "misrepresent[] the nature, characteristics, qualities, and geographic origin of Jae's 'Eagle Flight' products." (Docket No. 1 at 10.) Defendants respond that "uploads they made to Amazon may have inadvertently altered some detail pages, but only to the extent that those pages were changed to reflect the inventory that Defendants had on hand." (Docket No. 20-1 at 15.) Defendants go on to say that "[i]f anything, this represents a mischaracterization as to the extent of the inventory, and does not disparage the products." *Id.* Again, when the Court accepts Jae's factual allegations as true, the Court finds that Jae has pled sufficient facts to a state a claim for product disparagement as it relates to the alleged changes to its product detail pages under the statute.

Lastly, Jae contends that the Defendants' alleged phone calls offering incentives to customers to change their positive reviews to negative ones and reporting to customers that shipping delays were due to quality issues with the manufacturer, i.e. Jae, also constitute violations of the statute. (Docket No. 1 at 10.) Defendants argue that these alleged actions do not constitute "commercial advertising or promotion" under 15 U.S.C. § 1125(a)(1)(B).

The Sixth Circuit Court of Appeals recently defined "commercial advertising or promotion" as "(1) commercial speech; (2) for the purpose of influencing customers to buy the defendant's goods or services; (3) that is disseminated either widely enough to the relevant purchasing public to constitute advertising or promotion within that industry or to a substantial

14

portion of the plaintiff's or defendant's existing customer or client base." *Grubbs v. Sheakley Grp., Inc.*, 807 F.3d 785, 801 (6th Cir. 2015). This recent decision provides courts with a framework in which they can answer the threshold question of what constitutes an advertisement or promotion before turning to the five elements of a false advertising claim. *See Grubbs*, 807 F.3d at 799.

After reviewing Jae's Complaint, this Court finds that it has pled sufficient facts with regards to the Defendants' alleged phone calls offering incentives to customers to change their positive reviews to negative ones and reporting to customers that shipping delays were due to quality issues with the manufacturer, i.e. Jae, to meet the definition of a "commercial advertising or promotion" and state a claim for product disparagement. While these allegations may not support a claim for product disparagement after discovery, at this stage of litigation, Jae's Complaint successfully states a claim for product disparagement.

### III.   Federal False Advertising Claim Under 15 U.S.C. § 1125(a)(1)(B)

As the Court explained above, 15 U.S.C. § 1125(a)(1)(B) forms the basis for both product disparagement and false advertising claims. *Veteran Med. Products*, 2009 WL 891724, at *5. The legal standard is the same for both claims. *See* discussion *supra* pp. 10-12.

In its Complaint, Jae alleges that "Defendants' past and continued sale, offer to sell, distribution and advertisement of non-Eagle Flight automobile accessories under the 'Eagle Flight' trademark constitutes false advertising, as such conduct misrepresents the nature, characteristics, qualities, and geographic origin of Defendants' non-Eagle Flight automobile accessories." (Docket No. 1 at 12.) Defendants counter that Jae's allegation is "not accurate" because they "did not use any words, terms, names, symbols, or devices to describe" the products at issue as they "merely listed themselves as authorized sellers of Eagle Flight products

15

on a page created by [Jae]." (Docket No. 20-1 at 19.) The Defendants also argue that non-Eagle Flight products were delivered to the customers in question and "therefore any commercial advertising available on the product detail page was inapplicable." *Id.*

Once again, the Defendants are relying on a technicality in the process of selling merchandise on Amazon to escape liability. It is well established that goods sold through the internet fall under the jurisdiction of the Lanham Act. *Ford Motor Co.*, 911 F. Supp. 2d at 622. The Defendants allegedly listed their non-Eagle Flight products on the Amazon Eagle Flight product detail page created by Jae and, consequently, advertised under the Eagle Flight mark. (Docket No. 22 at 15.) While Jae created the product detail page, the Defendants chose to list themselves as a retailer of the product advertised on the page. By allegedly listing themselves as an authorized seller of Eagle Flight products and then selling non-Eagle Flight products to customers who believed they were purchasing the advertised Eagle Flight products, the Defendants effectively made a false statement in a commercial advertisement. Accepting Jae's allegations as true, the Court finds that it has provided sufficient factual allegations to support its claim for false advertising.

IV.     Federal False Designation of Origin and Unfair Competition Claims Under 15 U.S.C. § 1125(a)(1)(A)

"The Lanham Act covers trademark infringement as well as a host of other deceptive practices that might loosely be termed 'unfair competition.' One such form of unfair competition is the false designation of origin." *Johnson v. Jones*, 149 F.3d 494, 502 (6th Cir. 1998). Under the law, "false designation is simply a species of unfair competition" meaning that "*the two claims are one in the same.*" *Gen. Motors Corp. v. Keystone Auto. Indus., Inc.*, 453 F.3d 351, 354 (6th Cir. 2006) (emphasis added) (quoting *Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*, 78 F.3d 1111, 1123 (6th Cir. 1996)). A claim under 15 U.S.C. § 1125(a)(1)(A)

for false designation of origin, "presents a mixed question of fact and law." *Innovation Ventures, LLC v. N.V.E., Inc.*, 694 F.3d 723, 728 (6th Cir. 2012) (citing *Gen. Motors Corp. v. Lanard Toys, Inc.*, 468 F.3d 405, 412 (6th Cir. 2006)). This section of the Lanham Act imposes civil liability on

> [a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . .

15 U.S.C. § 1125(a)(1)(A). "A Lanham Act claim for false designation of origin must contain two elements: (1) the false designation must have a substantial economic effect on interstate commerce; and (2) the false designation must create a likelihood of confusion." *Johnson*, 149 F.3d at 502; *see also Grubbs*, 807 F.3d at 795; *Accelerated Analytics, LLC v. Int'l Bus. Machines Corp.*, No. 1:15 CV 401, 2015 WL 3828077, at *5 (N.D. Ohio June 19, 2015); *Leapers, Inc. v. SMTC, LLC*, No. 14-CV-12290, 2014 WL 4964376, at *2 (E.D. Mich. Oct. 3, 2014); *Ford Motor Co. v. Heritage Mgmt. Grp., Inc.*, 911 F. Supp. 2d 616, 629 (E.D. Tenn. 2012).[2] Notably, "[a]lthough the jurisdictional interstate commerce element is necessary, likelihood of confusion is the essence of an unfair competition claim." *Johnson*, 149 F.3d at 502 (quoting *Champions Golf Club*, 78 F.3d at 1123) (internal quotation marks omitted). With regards to the second element concerning the likelihood of confusion, this Circuit uses the same test as it does for

---

[2] Defendants argue that "[l]iability under the false designation of origin provision is established under the same standard as claims under the commercial advertising provision." (Docket No. 20-1 at 17.) However, the case cited by Defendants does not support that proposition and in fact discusses the two different standards applied under 15 U.S.C. § 1125(a)(1)(A) & (B). *See N.V.E.*, 694 F.3d 723, 728, 735 (6th Cir. 2012). While Defendants have stated the standard for a false advertising claim, it is not helpful to this Court in considering Jae's false designation of origin claim. *See Leapers*, 2014 WL 4964376, at *2.

trademark infringement. *Audi AG v. D'Amato*, 469 F.3d 534, 542 (6th Cir. 2006) (citing *Two Pesos v. Taco Cabana*, 505 U.S. 763, 780 (1992)). As this Court has previously stated, [i]n making a determination concerning whether a likelihood of confusion exists, a court must weigh the following eight factors:

> 1. strength of the senior mark;
> 2. relatedness of the goods or services;
> 3. similarity of the marks;
> 4. evidence of actual confusion;
> 5. marketing channels used;
> 6. likely degree of purchaser care;
> 7. the intent of defendant in selecting the mark; and
> 8. likelihood of expansion of the product lines

*Daddy's Junky Music Stores*, 109 F.3d at 280 (citing *Frisch's Restaurants*, 670 F.2d at 648).

Defendants argue that Jae has "merely alleged that some customers received the wrong product, and inferred that Defendants must not have any remaining Eagle Flight products in stock." (Docket No. 20-1 at 18.) Defendants state that "any misdelivered products were clearly identified as non-Eagle Flight products and were not likely to cause any customer confusion as to the origin of the products." *Id.* Alternatively, Jae argues that it has alleged that "Defendants advertised under the Eagle Flight mark and then filled orders from these listings with non-Eagle Flight products." (Docket No. 22 at 17.) Furthermore, Jae contends that the Defendants' alleged actions "deceive[] the consuming public into believing there is some connection between the generic products shipped and the Eagle Flight products ordered." *Id.* Lastly, Jae argues that Defendants' alleged conduct is "likely to cause confusion in the marketplace as to the source of the products offered [for sale] by Jae and Defendants." (Docket No. 1 at 13.)

After reviewing Jae's Complaint and the elements necessary to prove a claim under 15 U.S.C. § 1125(a)(1)(A), the Court finds that Jae's Complaint alleges sufficient facts to support its false designation of origin claim.

## V.   Unfair Competition Under Kentucky Common Law

In Kentucky, "[t]he common law doctrine of unfair competition has long been recognized and its coverage . . . expanded to meet many varying types of business conditions." *Migliore & Associates, LLC v. Kentuckiana Reporters*, LLC, No. 3:13-CV-315-H, 2013 WL 5323035, at *6 (W.D. Ky. Sept. 20, 2013) (quoting *Covington Inn Corp. v. White Horse Tavern, Inc.*, 445 S.W.2d 135, 137 (Ky. 1969)). "Courts apply the same analysis for Kentucky common law trademark infringement and unfair competition claims as they do for federal claims of trademark infringement." *Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.*, 703 F. Supp. 2d 671, 688 (W.D. Ky. 2010) *aff'd*, 679 F.3d 410 (6th Cir. 2012) (citing *Winchester Federal Savings Bank v. Winchester Bank, Inc.*, 359 F.Supp.2d 561, 564 (E.D. Ky. 2004)). Thus to prove an unfair competition claim under Kentucky common law, Jae must show that it 1) owns the Eagle Flight trademark; (2) the Defendants used the mark in commerce without authorization; and (3) the Defendants' use of the Eagle Flight mark was likely to cause confusion. *See EAT BBQ LLC v. Walters*, 47 F. Supp. 3d 521, 528 (E.D. Ky. 2014). The Court finds that Jae's complaint provides sufficient facts to allege a claim for unfair competition under Kentucky's common law. *See* discussion *supra* pp. 3-11.

## VI.   Defamation Under Kentucky Common Law

Under Kentucky law, the following four elements comprise a defamation claim: "1) a defamatory statement; (2) about the plaintiff; (3) which is published; and (4) which causes injury to reputation." *Brett v. Media Gen. Operations, Inc.*, 326 S.W.3d 452, 459 (Ky. Ct. App. 2010)

19

(citing *Columbia Sussex Corp., Inc. v. Hay*, 627 S.W.2d 270, 273 (Ky. Ct. App. 1981)). "Generally, defamatory words written or spoken of another are divided into two classes in determining the extent to which they are actionable. Words may be actionable per se, or per quod." *Gilliam v. Pikeville United Methodist Hosp. of Kentucky, Inc.*, 215 S.W.3d 56, 61 (Ky. Ct. App. 2006) (quoting *Hill v. Evans*, 258 S.W.2d 917, 918 (Ky. 1953)).

The Kentucky Supreme Court has stated that "words are . . . actionable *per se* when there is a conclusive presumption of both malice and damage." *Toler v. Sud-Chemie, Inc.*, 458 S.W.3d 276, 282 (Ky. 2014), *as corrected* (Apr. 7, 2015) (citations omitted). Words or statements are defamatory *per se* if they "tend to expose the plaintiff to public hatred, ridicule, contempt or disgrace, or to induce an evil opinion of him in the minds of right-thinking people and to deprive him of their friendship, intercourse and society." *Columbia Sussex Corp. v. Hay*, 627 S.W.2d 270, 274 (Ky. Ct. App. 1981) (quoting *Digest Publishing Company v. Perry Publishing Company*, 284 S.W.2d 832, 834 (Ky. 1955)). Statements found to be defamatory *per se* include "those which attribute to someone a criminal offense, a loathsome disease, serious sexual misconduct, or conduct which is incompatible with his business, trade, profession, or office." *Gilliam*, 215 S.W.3d at 61 (citing Restatement (Second) of Torts § 570 (1977)). When words or statements are defamatory *per se*, damages are presumed and the plaintiff need not allege or prove special damages to succeed on his or her defamation claim. *Gilliam*, 215 S.W.3d at 61 (citing *Hill*, 258 S.W.2d at 918.)

Alternatively, "[i]n a *per quod* action, the words themselves may or may not be defamatory. Courts focus not upon the actual meaning of the words but on the extrinsic facts which explain the meaning of the communications." *Jefferson Audio Visual Sys., Inc. v. Gunnar Light*, No. 3:12-CV-00019-H, 2013 WL 1947625, at *3 (W.D. Ky. May 9, 2013) (quoting *CMI*,

*Inc. v. Intoximeters, Inc.*, 918 F. Supp. 1068, 1083 (W.D. Ky. 1995)). Statements or words that are defamatory *per quod* are actionable "only if there is an allegation and proof of actual damages." *Gilliam*, 215 S.W.3d at 61 (citing *Walker v. Tucker*, 295 S.W. 138, 139 (Ky. 1927)). In a defamation *per quod* action, "the plaintiff must, in his Complaint, allege facts which would show specific damages and if plaintiff's prayer is for general damages only, the Complaint does not state a cause of action for [defamation] *per quod*." *Dennison v. Murray State Univ.*, 465 F. Supp. 2d 733, 750 (W.D. Ky. 2006) (citing *Rich v. Ky. Country Day, Inc.*, 793 S.W.2d 832, 837 (Ky. Ct. App. 1990)).

When our sister Court considered defamation *per se* in a business context, it recognized that "historically, damages to corporate reputation may be proven only by loss of profits caused by the defamation. The pecuniary loss must be a direct and proximate result of the defamation." *CMI*, 918 F. Supp. at 1083. The court went on to conclude that "[b]usinesses do not have personalities that are hurt so intangibly. If a business is damaged, the damage is usually reflected in the loss of revenues or profits. Therefore, courts should be very cautious about labeling as defamation *per se* comments made about a corporation or its products." *CMI*, 918 F. Supp. at 1084. In a later case, that same court found that "damages for defamation *per se* aimed at a corporation must be proved, so the distinction between the two types of defamation is largely unimportant." *Jefferson Audio Visual*, 2013 WL 1947625, at *2. The highest court in Kentucky once stated that "disparaging words spoken with reference to goods sold by a merchant are not actionable *per se* unless the words contain an imputation of fraud, deceit, dishonesty or other reprehensible conduct on the part of the merchant." *White v. Hanks*, 255 S.W.2d 602, 603 (Ky. 1953); *see also CMI*, 918 F. Supp. at 1084.

Here, Jae alleges in its Complaint that the Defendants' advertisement and sale of non-Eagle Flight products under the Eagle Flight mark constitutes defamation, "as such conduct is false and *likely to cause harm* to [its] reputation in the marketplace as a reputable dealer of 'Eagle Flight' products." (Docket No. 1 at 15 (emphasis added).) Jae also states that the Defendants' alleged alterations to its product detail pages on Amazon qualifies as defamation as their alterations contained false information and are "*likely to cause harm* to [its] reputation in the marketplace." *Id.* (emphasis added). Lastly, Jae states that Defendants' alleged phone calls offering customers incentives to change their positive reviews to negative ones and the alleged emails blaming shipping problems on quality issues with the manufacture, i.e. Jae, constitute defamation as the conduct was "false and *likely to cause harm* to Jae's reputation in the marketplace." *Id.* (emphasis added). Lastly, Jae states that it has "suffered irreparable harm" as a result of Defendants' defamatory statements. *Id.*

While this Court agrees with its sister court that there is little difference between defamation *per se* or *per quod* with regards to statements made against a corporation as damages must be proved under both claims, this Court has considered both forms of defamation and finds that Jae successfully pled a claim for defamation *per quod*. With regards to defamation *per se*, the Defendants' alleged statements do not "contain an imputation of fraud, deceit, dishonesty or other reprehensible conduct" on the part of Jae. *White*, 255 S.W.2d at 603. Therefore, Jae's Complaint does not state a claim for defamation *per se*.  However, the Court finds that Jae's Complaint does contain sufficient factual allegations to support a defamation *per quod* claim. While these allegations may not support a claim for defamation *per quod* after discovery, at this stage of litigation, Jae's Complaint successfully states a claim.

VII.   Claim for Tortious Interference with Prospective Business Advantage Under Kentucky
Law

Under Kentucky law, to prove a claim for tortious interference with a prospective business advantage, a plaintiff must show "(1) the existence of a valid business relationship or expectancy; (2) that [the defendant] was aware of this relationship or expectancy; (3) that [the defendant] intentionally interfered; (4) that the motive behind the interference was improper; (5) causation; and (6) special damages." *Snow Pallet, Inc. v. Monticello Banking Co.*, 367 S.W.3d 1, 6 (Ky. Ct. App. 2012) (*Monumental Life Ins. Co. v. Nationwide Retirement Solutions, Inc.*, 242 F.Supp.2d 438, 450 (W.D. Ky. 2003)). "The analysis turns primarily on motive." *Snow Pallet*, 367 S.W.3d at 6 (citing *National Collegiate Athletic Ass'n By and Through Bellarmine College v. Hornung*, 754 S.W.2d 855, 859 (Ky. 1988)). "To prevail under this theory of liability, the party seeking recovery must show malice or some significantly wrongful conduct." *Id.* Additionally, a plaintiff "must allege and prove special damages to recover under this cause of action." *CMI*, 918 F. Supp. at 1080-81 (citing *Henkin, Inc. v. Berea Bank & Trust Co.*, 566 S.W.2d 420, 425 (Ky. Ct. App. 1978)).

In its Complaint, Jae contends that the Defendants' following actions support a claim for tortious interference: (1) the Defendants' alleged advertisement and sale of non-Eagle Flight products under the Eagle Flight mark, (2) their alleged alterations to Jae's product detail pages, (3) their alleged practice of offering incentives to customers to change positive product reviews to negative ones and (4) their email to a customer stating that shipping delays were due to problems with the manufacturer. (Docket No. 1 at 16-17.) Jae argues that these actions are "likely to discourage prospective purchasers of aftermarket automobile accessories from buying Jae's products." *Id.* Jae also alleges that "[a]s a result of the Defendants' . . . conduct, [it] has suffered irreparable harm constituting an injury for which Jae has no adequate remedy at law."

23

*Id.* at 17. In their Motion to Dismiss, the Defendants argue that Jae has failed to show that it had a valid business expectancy, that the Defendants acted with malice, and that it suffered actual, special damages. (Docket No. 20-1 at 27-29.)

The Court will first address whether or not Jae has pled sufficient facts of a valid business expectancy. "A valid business expectancy exists when there is a reasonable likelihood or a probability, not mere wishful thinking that a business relationship will come about. *Ventas, Inc. v. Health Care Prop. Inv'rs, Inc.*, 635 F. Supp. 2d 612, 621 (W.D. Ky. 2009) (quoting *Lucas v. Monroe County*, 203 F.3d 964, 979 (6th Cir. 2000)) (internal quotation marks omitted). In order to demonstrate that a realistic expectation does indeed exist, a plaintiff "must prove an anticipated business relationship with an identifiable class of third parties." *Ventas*, 635 F. Supp. 2d at 621 (quoting *Lucas*, 203 F.3d at 979). The Sixth Circuit Court of Appeals has found a valid business expectancy to exist when but for the defendant's improper conduct, the plaintiff, a towing company, would have been placed on a towing company rotation list with other towing companies to help stranded motorists move their vehicles. *Lucas*, 203 F.3d at 979. The Sixth Circuit noted that "[w]hile the amount of towing business Plaintiffs would have received if placed on the call list cannot be specifically determined, this issue goes only to damages." *Lucas*, 203 F.3d at 979. As our sister court has stated, "Kentucky courts have not extensively examined the expectation requirement. Thus, predicting a settled view is difficult." *Ventas*, 635 F. Supp. 2d at 622. In its Response, Jae argues that it has shown that a valid business expectancy exists between it and "its online customer base, specifically its Amazon customer base that is composed of many repeat customers." (Docket No. 22 at 23.) This Court believes that while the specific number of customers Jae would have done business with but for the Defendants' alleged

actions is not ascertainable, Jae's Complaint contains sufficient factual allegations to demonstrate that a valid business expectancy exists between Jae and its Amazon customer base.

Next, the Court must consider whether Jae's complaint contains sufficient allegations of malice. Malice goes to the fourth element of a tortious interference with prospective business advantage claim, which requires that the motive behind the interference be improper. In order to demonstrate improper conduct, the plaintiff must provide evidence of "malice or some significantly wrongful conduct." *Ventas*, 635 F. Supp. 2d at 622. "Under Kentucky law, significantly wrongful conduct certainly includes fraudulent misrepresentation, deceit, coercion, threats of illegal conduct, and physical violence, which are specifically highlighted as improper acts." *Id.* (citing *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 487 (Ky. 1991)). Furthermore, in Kentucky, "malice may be inferred in an interference action by proof of lack of justification." *Hornung*, 754 S.W.2d at 859. As this Court's sister court noted when considering this element, "the real question is whether the actor's conduct was fair and reasonable under the circumstances." *Ventas*, 635 F. Supp. 2d at 622 (quoting Restatement (Second) of Torts § 767 cmt. j. (1979)). In determining whether the actor's conduct was fair and reasonable, "[p]ertinent factors may include recognized standards of business ethics and business customs and practice, the concepts of fair play, and rules of the game." *Id.* (quoting Restatement (Second) of Torts § 767 cmt. j.). If a plaintiff fails to show "bad-faith, illegitimate motive or unlawful or wrongful conduct, there is no tortious interference." *AMC of Louisville, Inc. v. Cincinnati Milacron Inc.*, No. CIV.A. 397CV343H, 2000 WL 33975582, at *6 (W.D. Ky. Jan. 25, 2000) (first citing *Hornung*, 754 S.W.2d at 858; the citing *Leo J. Brielmaier Co. v. Newport Housing Auth.*, 173 F.3d 855 (Table), 1999 WL 236193, at * *7–* *8 (6th Cir. 1999)). When this Court considers the factual allegations in Jae's Complaint true, which it must do at this stage of litigation, this Court

finds those allegations satisfy the requirement that the Defendants' alleged conduct be improper as the alleged conduct certainly violated the "concepts of fair play" and the "rules of the game."

Lastly, the Court will analyze whether or not Jae's Complaint satisfies the final element of special damages. "Under Kentucky law, [Jae] must allege . . . special damages to recover under this cause of action." *CMI*, 918 F. Supp. at 1080 (citing *Henkin*, 566 S.W.2d at 425). "[T]he terms 'special' damages and 'pecuniary' damages are used interchangeably." *Id.* at 1081. Lost profits for a business is "an ascertainable measure" of pecuniary damages. *Id.* (citing *Carmichael–Lynch–Nolan, Etc. v. Bennett, Etc.*, 561 S.W.2d 99, 102 (Ky. Ct. App. 1977)). In its Response, Jae argues that it "is a powerhouse brand in the aftermarket automobile accessory industry and it is absolutely probable and likely that [it] would have sold more products on Amazon but for the Defendants' wrongful acts." (Docket No. 22 at 25.) Additionally, in its Complaint, with regards to damages, Jae states that it "has suffered irreparable harm constituting an injury for which [it] has no adequate remedy at law." (Docket 1 at 17.) After a review of its Complaint, the Court finds that Jae has pled sufficient factual allegations to satisfy the element of special damages. While Jae's allegations may not satisfy this element after discovery, at this stage of litigation, Jae's Complaint successfully pleads special damages.

### VIII.   Trademark Infringement Claim Under Federal Common Law

Both parties agree that there is no federal common law claim for trademark infringement. (Docket Nos. 20-1 at 22; 22 at 19); *see also Int'l Order of Job's Daughters v. Lindeburg & Co.*, 633 F.2d 912, 915 (9th Cir. 1980). Jae requests that the Court allow it to amend its complaint to change this claim from a claim for federal common law trademark infringement to a claim for Kentucky common law trademark infringement. The Court will GRANT Jae's request.

**Conclusion and Order**

For the aforementioned reasons, this Court **DENIES** Defendants' Motion to Dismiss, (Docket No. 20), and **GRANTS** Plaintiff's request to amend its complaint, (Docket No. 22 at 19.)

cc: Counsel